Subj:    **Fwd: Criminal Bad Behavior 06cv1607Judge James M. RosenbaumMN or Notice Appea...**
Date:    6/28/2006 3:40:43 A.M. Central Daylight Time
From:    Sharon4Anderson
To:    michael.campion@state.mn.us, info@dnr.state.mn.us, info@johnsonforag.org,
    info@judicialwatch.org, info@mngop.com, info@sppa.com, info@summithillassociation.org,
    info@taxpayersleague.org, info@visionamerica.us
CC:    Shewolfeagle, mzack@startribune.com, parridder@pioneerpress.com, scoop@pioneerpress.com,
    tnelson@pioneerpress.com, rosenbaum@am1500.com, moconnell@am1500.com,
    john.harrington@ci.stpaul.mn.us, bob.fletcher@co.ramsey.mn.us, bsalisbury@pioneerpress.com,
    pgustafson@startribune.com, dsmith@startribune.com, linda.finney@state.mn.us

----------------

Forwarded Message:

Subj:    **Fwd: Criminal Bad Behavior 06cv1607Judge James M. RosenbaumMN or Notice Appea...**
Date:    6/28/2006 3:34:45 A.M. Central Daylight Time
From:    Sharon4Anderson
To:    Sharon4Anderson, pacerwebmaster@ck8.uscourts.gov, library8th@ca8.uscourts.gov,
    craig.r.anderson@state.mn.us, jane.jarvinen@state.mn.us, bradford.delapena@state.mn.us,
    trudy.moloney@ci.stpaul.mn.us, margaret.egan@ci.stpaul.mn.us,
    marcia.moermond@ci.stpaul.mn.us, elizabeth.davis@ci.stpaul.mn.us,
    kenneth.smith@ci.stpaul.mn.us, thomas.davenport@ci.stpaul.mn.us, velma.korbel@state.mn.us,
    brian.mcclung@state.mn.us, admin.info@state.mn.us, gene.hugoson@state.mn.us,
    glenn.wilson@state.mn.us, alice.seagren@state.mn.us, cal.ludeman@state.mn.us,
    matt.kramer@state.mn.us, deed.customerservice@state.mn.us, peggy.s.ingison@state.mn.us,
    dianne.mandernach@health.state.mn.us, dianne.mandernach@state.mn.us,
    kevin.goodno@state.mn.us, m.scott.brener@state.mn.us, dli.commissioner@state.mn.us,
    larry.shellito@state.mn.us, gene.merriam@state.mn.us, michael.campion@state.mn.us,
    dan.salomone@state.mn.us, carol.molnau@state.mn.us, michael.pugliese@state.mn.us,
    susan.heegard@state.mn.us, tim.marx@state.mn.us, mhfa@state.mn.us,
    sandy.layman@state.mn.us, sheryl.corrigan@state.mn.us, diverson@pioneerpress.com,
    aharrington@pioneerpress.com, cselix@pioneerpress.com, dbeal@pioneerpress.com,
    jbjorhus@pioneerpress.com, scarlson@pioneerpress.com, dfondler@pioneerpress.com,
    jforster@pioneerpress.com, mhopp@pioneerpress.com, khubbard@pioneerpress.com,
    rhubbard@pioneerpress.com, sjean@pioneerpress.com, jkrocheski@pioneerpress.com,
    mmoylan@pioneerpress.com, lsuzukamo@pioneerpress.com, twebb@pioneerpress.com,
    jwelbes@pioneerpress.com
CC:    chris.coleman@ci.stpaul.mn.us, waterinquiries@ci.stpaul.mn.us, larry.dease@courts.state.mn.us,
    russell.anderson@courts.state.mn.us, fred.grittner@courts.state.mn.us, vbittner@infonet.isl.net
*Right-click picture(s) to display picture options*

----------------

Forwarded Message:

Subj:    **Criminal Bad Behavior 06cv1607Judge James M. RosenbaumMN or Notice Appeal 8thCir**
Date:    6/28/2006 3:28:27 A.M. Central Daylight Time
From:    Sharon4Anderson
To:    fraudnet@gao.gov, webmaster@gao.gov, AndersonP1@gao.gov, CongRel@gao.gov
CC:    sensenbrenner@mail.house.gov, rich_sletten@mnd.uscourts.gov,
    rosenbaum_chambers@mnd.uscourts.gov, tim.pawlenty@state.mn.us, askdoj@usdoj.gov,
    james.lackner@usdoj.gov, attorney.general@state.mn.us
*Right-click picture(s) to display picture options*

# TO: David M. Walker, Comptroller General of the United States

Dated: Wed. 28Jun06  by E Commerce at 5:09am

TO THE ABOVE NAMED:

AFFIDAVIT OF SHARON SCARRELLA ANDERSON
A VA WIDOW, SENIOR, DISABLED, POLITICAL ACTIVIST, ECF FORENSIC
ANALYST UNDER PENALITY OF PERJURY.

Humble Request for Integrity in Government for all citizens.

Submitted in good Faith the Federal Civil Rights litigation:  06CV1607, WITH
30 years of Federal litigation and attached 19 pages pdf file of Affidavit of Prejudice against
Federal Judge James Rosenbaum  who for years has Obstructed Legal Process to coverup
theCourts Corruption in Minnesota.

CASE FIXING BY A FEDERAL JUDGE IS  A FELON

This is to trigger an Audit or investigation of Rosenbaums Abuse of ECF
Filings for his own pecuniary gain,  to steal the filing fees US Dist.02-0332 to reduce the
citizenery to poverty, then deny access to the Seats of Government is Bizzare. 06cv1607   AND
OR NOTICE TO APPEAL.

Then  based on the Declaratory Judgment Act of 1934

"In cases of actual controversy the court of the US
shall have power * * * to declare * * * * final
judgment and be reviewable as such* * * *

Rosenbaum to deny IFP  Doc (3,4,5,) undersigned has been reduced to poverty,
social security receipient, disabled, senior, woman Attorney Pro Se,
further Doc ,7 Rescusal Affidavit of Prejudice in re: Scarrella for Associate
Justice 221NW2nd562 and Separation of Powers Doctrine  when we sued the Federal Bench
30 years ago  for blatant abuse of Denial of Seats of Government.

Then to insult my intelligence by the 1 page Order to strike and vacate a civil
rights of taking the basic necessity of life " WATER"
http://www.angelfire.com/mn3/andersonadvocates/2006water/water.html
when no moving papers from the City of St. Paul or its attorneys to dismiss,vacate or strike,
police brutality to stalk me, causing Ankle Fracture, in Wheel Chair and Crutch's is
repugnant to Homeland Security.

Rosenbaum lied to Congress , IS CONDUCTING A "PATTERNED
ENTERPRISE IN HIS OFFICIAL CAPACITY AS A LIFETIME FEDERAL JUDGE TO
OBSTRUCT JUSTICE, CASE FIXING AGAINST THE CITIZENERY,

### TREASON AGAINST THE CONSTITUTION,PERSONS OF THE US MUST NOT BE TOLERATED.

**Further Affiant sayeth not at this time:**
s/ Sharon Anderson  sig. below    **www.msnusers.com/AndersonAdvocates**

C

**By phone:** (202) 512-3000 (Locator)

**By email:** webmaster@gao.gov

## Organizational Phone Book

The GAO Organizational Telephone Directory provides contact information for Agency personnel. This document is updated frequently.

## GAO PUBLICATIONS

**By phone:** (202) 512-6000

## PUBLIC AFFAIRS

Contact: Paul Anderson
AndersonP1@gao.gov

**Room Number:** 7149

**Phone Number:** (202) 512-4800

## CONGRESSIONAL RELATIONS

**Contact:** Gloria Jarmon
CongRel@gao.gov

**Room Number:** 7125

**Phone Number:** (202) 512-4400

lick here: Contact GAO



**VOTE SHARON ANDERSON ATTORNEY GENERAL telfx: 651-776-5835 Sharon4Anderson@aol.com SharonsWaterShutOff19Apr06**

**Sharon4Anderson's Legal BlogBriefs**
**Anderson + Advocates** P165913sa1299 **PACER** N**ancy Osterman's story Betty**
**Speaker's Story**
**CM/ECF** Sharon4Anderson's Legal BlogBriefsAOL Olmstead v. US GovLawbreaker Vision
America: US v Cruikshank92US542(1875)Decend to Particulars Judges As Criminals?
OIC

| | |
|---|---|
| Subj: | **AFFIDAVITS PREJUDICE(MN) JAMES ROSENBAUM_FRANKLIN _NOELJUDICIARYCONDUCT** |
| Date: | 5/6/2006 6:38:09 P.M. Central Daylight Time |
| From: | Sharon4Anderson |
| To: | ecfhelpdesk@mnd.uscourts.gov, helpdesk@fedworld.gov, tim.pawlenty@state.mn.us, attorney.general@state.mn.us, askdoj@usdoj.gov, james.lackner@usdoj.gov, rca@co.ramsey.mn.us, mzack@startribune.com, cdefiebre@startribune.com, tnelson@pioneerpress.com, scoop@pioneerpress.com, pgustafson@startribune.com, sensenbrenner@mail.house.gov, russell.anderson@courts.mn.us, fred.grittner@courts.state.mn.us |
| CC: | Sharon4Anderson, eagledahn1 |

> According to Congress, U.S. Supreme Court case law and Minnesota's canons of judicial ethics, a judge must bow out of hearing any case in which his or her impartiality might reasonably be questioned.  The Minnesota Canons of Judicial Conduct say that judges must avoid all impropriety and appearance of impropriety.  *"The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired."*

# United States District Court
# District of Minnesota



## TOLL-FREE CM/ECF HELP DESK: 866-325-4975 or 612-664

### 06cv1607

### Related Cases 02-0332(Rosenbaum/Noel)

### 97- 1258(Montgomery)

### 22 others on file since 1973

### COVA:          03-0639(Clark Dryrud)

## NOTICE AND MOTIONS TO RECUSE WITH

## PREJUDICE. CHIEF JUDGE

## JAMES ROSENBAUM, FRANKLIN NOEL FOR

## PATTERNS OF BAD BEHAVIOR FOR YEARS.

Saturday, May 06, 2006 America Online: Sharon4Anderson

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**UNITED STATES OF AMERICA, STATE OF MINNESOTA**

**ALL AGENCIES,Counties of Ramsey,Itasca,Aitkin,CrowWing,**

**City of St. Paul and its City Attorneys, dba Tax Exempt Utilities,District EnergySt. Paul Water Commissioners , www.bull.com  data warehousing Medical Records,John Doe Mary Roe, individually,severally,and in**

**Official Capacities,         Complaintants_ Title 31 Relatees**

**vs**

**697 Surrey St.- SharonShutOff19Apr06 SharonScarrellaAnderson  .**

**Water CaseNumber:4256**

**Title 26 501(c)3**

# *MOTION TO RECUSE*

**Now comes the above named,  VA Widow Sharon Peterson_Chergosky_Scarrella Anderson  and moves to recuse Judge's James Rosenbaum,    Ann Montgomery, Franklin Noel and others as their interests appear, from the above entitled matter under 2**

| 009335X | ROSENBAUM | JAMES | M | | MINNEAPOLIS | MN |
|---------|-----------|-------|---|---|-------------|-----|

| 0074561 | MONTGOMERY | ANN | D | | MINNEAPOLIS | MN |
|---------|------------|-----|---|---|-------------|-----|

| 0153795 | NOEL | FRANKLIN | L | | MINNEAPOLIS | MN |
|---------|------|----------|---|---|-------------|-----|

**MS 176.312Aff Pred**

**8 USCS Sec. 455, and Marshall v**

**Jerrico Inc., 446 US 238, 242, 100 S.Ct. 1610, 64 L. Ed. 2d 182 (1980).**

> **"The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law."**

The above is applicable to this court by application of Article VI of the United States Constitution and <u>Stone v Powell</u>, 428 US 465, 483 n. 35, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976).

> "State courts, like federal courts, have a constitutional obligation to safeguard personal liberties and to uphold federal law."

Also see Minnesota Supreme Court , Judicial Canons listed below.

The above mentioned Judge's have  in the past deliberately violated our  litigant's personal liberties and/or has wantonly refused to provide due process and equal protection to all litigants before the court or has behaved in a manner inconsistent with that which is needed for full, fair, impartial hearings.

Embellezed Filing Fee's re: US Dist 02-0332, Locked Court Doors, when my husband was at Brainard for 1 year........

Which has led to Murder of Cpl Anderson21Sept00

Murder of Steven M. Quale9Feb05

The United States Constitution guarantees an unbiased Judge who will always provide litigants with full protection of ALL RIGHTS.   Therefore, Petitioner respectfully demands said judge's recuse themselves in light of the evidence attached as Exhibit 1  detailing prior unethical and/or illegal conduct or conduct which gives Petitioner good reason to believe the above Judge 's cannot hear the above case "s in a fair and impartial manner

The Court for 30 years In re Scarrella for Associate Justice 221NW2d562, has Denied Employment in their Exclusive Franchise, contrary to Separation of Powers Doctrines.

July 12, 2002

[1] In a related advisory opinion, the Committee analyzes recusal issues arising from a judge's representation by the U.S. Department of Justice in legal proceedings. See Advisory Opinion No. 102.

[2] The Committee notes that 28 U.S.C. § 455 contains language substantially similar to Canon 3C (1). However, the charter of the Committee does not permit it to render opinions interpreting section 455. Judges may want to review the judicial interpretation of section 455 by various federal circuits in addition to the advice contained in this opinion.

<u>C</u>

JUDICIARY POLICIES AND
PROCEDURES: CODES OF
CONDUCT
Introduction

Canon 1.                          **A Judge Should Uphold the Integrity and Independence
                                  of the Judiciary**

**Canon 2.**                      **A Judge Should Avoid Impropriety and the Appearance
                                  of Impropriety in All Activities**

**Canon 3.**                      **A Judge Should Perform the Duties of the Office
                                  Impartially and Diligently**

**Canon 4.**                      **A Judge May Engage in Extra-Judicial Activities To
                                  Improve the Law, the Legal System, and the
                                  Administration of Justice**

**Canon 5.**                      **A Judge Should Regulate Extra-Judicial Activities To
                                  Minimize the Risk of Conflict with Judicial Duties**

**Canon 6.**                      **A Judge Should Regularly File Reports of Compensation
                                  Received for Law-Related and Extra-Judicial Activities**

**Canon 7.**                      **A Judge Should Refrain from Political Activity**

**Compliance with the Code of Conduct**

**Applicable Date of Compliance**

**Checklists for Financial and Other Conflicts of Interest** (PDF)

**lick here: JUDICIARY POLICIES AND PROCEDURES: CODES OF CONDUCT**
          **Further Affiant Sayeth not at this Time:**

          **Its Peculiar that any Judge can make Rulings without the State even having
Salute The Troops& Cpl. James R. Anderson USMC:11028855** Motions,  Bizzare way to do
Justice.
**USCAVC Docket 03-0639 Sharon L. Anderson**
          **To Shut off our Water , Basic Necessity off Life is the Absolute last
Straw............  ''taking'' our Homes not once but numerous times for the past 30 years......**



**VOTE SHARON ANDERSON ATTORNEY GENERAL telfx: 651-776-5835
Sharon4Anderson@aol.com**
**Anderson + Advocates** P165913sa1299 **PACER**
**CM/ECF** Sharon4Anderson's Legal BlogBriefsAOL Olmstead v. US GovLawbreaker Vision America: US v
Cruikshank92US542(1875)Decend to Particulars Judges As Criminals? OIC



# Getting Judge Rosenbaum

*by David Rubenstein*

On May 14, 2002, Judge James M. Rosenbaum, chief judge of the U.S. District Court for the District of Minnesota, appeared before the Crime, Terrorism, and Homeland Security Subcommittee of the House Judiciary Committee. He had been invited to give his views on proposed legislation dealing with the federal sentencing guidelines. Republicans on the committee were pushing hard for the legislation. Rosenbaum opposed it.

He may have thought he was doing his civic duty, but some Republicans on the Judiciary Committee didn't see it that way. They went over his testimony with a legal microscope, cross-referencing to court records and transcripts, looking for anything that arguably could be called a misstatement or omission.

About a week after the hearing, Rosenbaum received the first of a series of letters suggesting there were problems with his testimony and demanding more information, and some court records.

About six months after the hearing, in October of 2002, the committee issued a bound report that featured 22 pages of criticism of and accusations against Rosenbaum. It said, among other things, that he had failed to follow the sentencing guidelines and that he had lied to the subcommittee.

Rosenbaum's supporters in turn have accused Republicans on the committee, spearheaded by Chairman F. James Sensenbrenner Jr. of Wisconsin, of conducting a witch-hunt. They say the accusations were bogus, based largely on a perverse interpretation of how the sentencing guidelines work and a misunderstanding, perhaps purposeful and contrived, of what Rosenbaum had said to the



*"This is my eleventh year in Congress," says Rep. Scott, "and I've never seen anything like this. I don't see how you can interpret it as anything other than an attempt to intimidate anyone who seeks to tesify against a bill by the majority on the committee."*

subcommittee.

More than a year after the hearing, as this article was being prepared, the matter was still simmering and no one could say for sure where it was headed. Rosenbaum had retained Victoria Toensing, one of the most seasoned and well-connected Republican attorneys in Washington to try to put out the fire. On the case for the subcommittee was chief counsel Jay Apperson, a tenacious right-wing prosecutor and former Kenneth Starr deputy on the investigation of President Clinton.

Under terms of an agreement that averted a subpoena, Rosenbaum was being treated like Enron scum: A magistrate from the Administrative Office of the U.S. Courts had been dispatched to his offices to pore over sentencing records going back to 1999.

Meanwhile the subcommittee, after being rebuffed in its attempt to get the General Accounting Office (GAO) to investigate Rosenbaum, had prevailed upon the GAO to conduct a wider inquiry into sentencing patterns of all federal judges in Minnesota.

On the Judiciary Committee, Rosenbaum's staunchest defender is Rep. Robert C. Scott, an attorney and Democrat, and the first African-American congressman from Virginia since Reconstruction.

"This is my 11th year in Congress," Scott says, "and I've never seen anything like this. I don't see how you can interpret it as anything other than an attempt to intimidate anyone who seeks to testify against a bill supported by the majority on the committee."

There are two possible tracks an attack on Rosenbaum could take, to carry it to a finish. One is impeachment. The other is criminal indictment. A source familiar with the majority subcommittee position says that a perjury charge is not an option because Rosenbaum was not under oath, but also notes that knowingly making false statements to Congress or an agency is a violation of federal statute. The source added, however, that a referral is not being contemplated.

**Tough Sentencer**

The attack on Rosenbaum raises the question of whether the heretofore seemingly unstoppable conservative Republican revolution in the United States may be approaching that

classic stage of overripeness when it begins to eat its own children.

Rosenbaum was a protégé of Republican Sen. Rudy Boschwitz, and at Boschwitz's recommendation, an appointee of the father and progenitor himself, Ronald Reagan.

"I was in the Senate for 12 years and had the opportunity to appoint one judge — or recommend, whatever the proper word is — and Jim was it," says Boschwitz. "I've always thought it was one of the better things I did."

Rosenbaum has a reputation as a tough sentencer, "certainly not the judge you would most prefer your cases to be in front of," says Minneapolis defense attorney Joe Friedberg.

Jon Hopeman, attorney with Felhaber Larson Fenlon & Vogt, was an assistant U.S. attorney for 11 years, two of them under Rosenbaum when Rosenbaum was U.S. attorney in the early 1980s. Since then he has both prosecuted and defended clients in front of him.

"I have clients still writing letters of complaint to me about their sentences," Hopeman says.

He recalls one letter that went to Rosenbaum himself, from a Columbian drug dealer whom Rosenbaum had given 60 years. "And that was before the guidelines," Hopeman says.

The man wrote to request his 60 years be changed to a death sentence.
But Rosenbaum is not an off-the-shelf conservative. He came of age in the '60s with a social conscience informed by a profoundly conservative respect for institutions. At a time when many of his peers and friends were picketing or otherwise raising hell as participants and cheerleaders of the nascent civil rights movement, Rosenbaum kept his head down in law school and emerged standing as a Vista legal rights worker on the South Side of Chicago.

Whereas some judges are inclined to sentence in silence, Judge Rosenbaum is known for his colloquies, which sometimes resemble an old-fashioned dressing-down by the principal.

Rosenbaum's admirers say he speaks from the heart, firm but fair. His detractors, and even some of his admirers, say he frequently tilts to the pompous. There are a number of theories about what got Judge Rosenbaum in trouble, and one of them is that when it came to pomposity, he

met his match and didn't know it. Or perhaps he was just a bit too earnest.

"It's been a real eye-opener I think for my brother, who unlike me thinks the world runs on decency," says Twin Cities attorney and radio personality Ron Rosenbaum. "We grew up together, but I always thought he was a little more naive and felt that the political process was not quite as rough and tumble as it in fact is.

"This," says Rosenbaum, "is nothing more than my brother being used as a political football, to play out an agenda of limiting the power of the judiciary."

Senior Judge Paul A. Magnuson of the U.S. District Court for the District of Minnesota, who was chief judge until Rosenbaum began his tenure in 2001, has a unique perspective on Rosenbaum's travails. "There but for the grace of God," he says.

Judges nationwide share the sentiment, but Magnuson, a Reagan appointee who has been on the bench since 1981, has something specific in mind. The initial request to testify at the May 14 hearing went to him, but he had a scheduling conflict.

"I know that Judge Rosenbaum views these things about the same as I do, and he's an articulate guy," Magnuson says. "I picked up the phone and said, 'Hey Jim, you are going to get a call.'"

The call was a request to testify at hearings regarding proposed bill H.R. 4689. You could think of H.R. 4689 as a dope slap to the U.S. Sentencing Commission, which had, as it may each year, proposed amendments to the federal sentencing guidelines. Commission amendments go into effect on November 1, unless Congress votes to negate them. H.R. 4689, supported by Republicans on the committee, would have done just that.

Of particular interest to Sensenbrenner and the other Republicans on the subcommittee was a Sentencing Commission recommendation that would, in Judge Magnuson's thumbnail, "cap the points on mules,"  thus resulting in some reduction in their sentence. (See accompanying piece, "The Judicial Problems of Mules.")
In Magnuson's view, the subcommittee's project constitutes a serious breach of separation of powers — "incredibly inappropriate," he says. Magnuson notes that there are specific rules for

departing from the guidelines, and as far as he knows Rosenbaum follows them.

In any case, oversight on sentencing issues is not a job for Congress, according to Magnuson. "My Constitution contains no such provision. If the trial judge in someone's view acts improperly, it goes to the Court of Appeals."

**Bedfellows**

They say politics makes strange bedfellows, but this affair demonstrates that it can make pretty strange ex-bedfellows too.

Sensenbrenner was first elected in 1978, but he was little known nationally until January of 1999, when he delivered the speech making the House case for impeachment of Clinton.

The speech made numerous references to "civil rights" (in the context of the Paula Jones case), a strategy that piqued the interest of political journalist John Nichols. "Outside of a handful of Southern congressmen," Nichols wrote at the time, "Sensenbrenner has perhaps the most troubling civil rights record in the House."

Sensenbrenner is the multimillionaire heir to a fortune made in the paper business, and he represents a solidly Republican district that includes bedroom suburbs stretching north and west of Milwaukee. But he can't be understood solely as a lockstep right-winger. "Sensenbrenner doesn't try to win popularity contests among Republicans or Democrats, and he is very protective of his role as chairman," says Jeff Mayers, editor and president of WisPolitics.com, a political news service.

Rosenbaum is not the first public figure Sensenbrenner threatened with a subpoena. That distinction goes to Attorney General John Ashcroft, for attempting to stonewall the Judiciary Committee's attempt to get information about the Patriot Act and possible abuses of power. (They worked it out.)

The chief counsel to the subcommittee, Jay Apperson, was hired by Sensenbrenner about two years ago. He was deputy to special counsel Kenneth Starr and was reportedly under consideration to replace Starr before he resigned in 1999.

"If you become a target of Jay Apperson," says one anonymous source who crossed swords with him during his 13-year career with the Justice Department, "it's not a polite inquiry. He doesn't run polite inquires."

A well-spoken Southerner, Apperson is a former assistant U.S. attorney for the Eastern District of Virginia, where he will always be remembered by some for the confederate paraphernalia that adorned his office. He was hired by Sensenbrenner about two years ago.

Rosenbaum eschewed local counsel and went right to the heart of darkness to reach the third ex-bedfellow in this drama, Victoria Toensing, partner in the Washington, D.C., law firm diGenova & Toensing.

Toensing was a noted Clinton-basher, writing scathing and slightly racy op-eds for the *Washington Times* at the peak of the party. But that's just a footnote to a long and remarkable career. Her curriculum vitae suggests she might be fathomed as a Washington, D.C., political version of the legendary Hollywood producer and finagler Sam Spiegel, about whom the film director Billy Wilder once said in homage: "If you woke up in a motel with a dead whore who'd been stabbed, who would you call?"

Toensing has represented both members of Congress and people appearing before Congress, and has been a frequent witness herself before congressional committees. Early in her career, she was chief counsel for Sen. Barry Goldwater when he chaired the Senate Select Committee on Intelligence, and she is credited with creating the Justice Department's terrorism unit while serving in the department under Ronald Reagan. For a while she made a career out of managing the legal pursuit of terrorists and hijackers. In 1997, she was named special counsel by the House of Representatives to probe the International Brotherhood of Teamsters. She has also become a familiar face on the faster-moving TV public affairs shows, where she more than holds her own with the likes of Bill Maher.

Rosenbaum is the last person you'd expect to wake up under the circumstances conjured up by Wilder, but he certainly did get a wake-up call in late May 2002, when he got the opening letter from the subcommittee, a week or so after he testified. It was one of those letters that in the reading produces measurable changes in the viscera and permanent changes in the brain, as you understand on the spot that it will mark a milestone in your life and a permanent change, the exact nature of which will not be clear for some time.

"Thank you for your recent testimony," it began. "Would you please provide the Subcommittee with the following information concerning each case referenced in your testimony. …"

There followed a list of items, framed in the style of a discovery request, some of them employing that most unsettling of litigator's techniques, ominously akin to the fisherman's setting of the hook, wherein the interrogator echoes the target's own words, which appear oh-so-naked and helpless as the interrogator holds them up like mice by the tail. ("Please identify any multiple defendant case over which you presided and in which you declined to sentence the planner and enterprise-operator who set the evil [drug-trafficking scheme] plan in motion and who figures to take its profits at the high end of his guideline range and/or in which you declined to sentence the minor or minimal participants who did a day's work at the low end of the guidelines range. ..." )

And so on, for two pages. Eleven items in all.

An exchange of letters followed, with Rosenbaum apparently still not fully grasping what he was having to come to grips with. In one letter, he concludes by offering to take Texas Rep. Lamar Smith (at the time the signatory to the subcommittee's letters) on a tour of the penal institution of his choice. "I know that meeting and discussing sentencing with those who know it most intimately would provide a further insight into the workings of the Sentencing Guidelines system," he wrote.

Then, in November, Rosenbaum got to see something quite terrible that few of us will ever see, a real stomach-grabber: his own name in a published U.S. government document (H.R. Rep. No. 107-769 (2002)), not buried in the text, but set off as part of little chapter-like section heads, in a 22-page section of text that reads like a legal complaint. The chapters have titles like: "Assurances of Categorical Enhancements for Criminal History were not Reflected in Judge Rosenbaum's Own Sentencing of 'EPR.'" And so on.

A short time later he retained Toensing.

**The Koon Downdraft**

Whatever the role played by personalities in this episode, Judge Rosenbaum appears to

have been caught up in political winds triggered by a 1996 U.S. Supreme Court decision called Koon v. United States.

Stacey Koon was one of the Los Angeles cops who beat up Rodney King. Or, as the decision says more eloquently and precisely, willfully permitted the other officers to use unreasonable force during the arrest. Koon was found guilty, but got a big downward departure in his sentence.

In Koon, the Supreme Court summarized what could be considered an acceptable rationale for a departure from a by-the-book sentence generated by a guidelines computation: If a judge perceives some factor that is not specifically mentioned in the guidelines and it is significant enough to take the case out of the "heartland" of cases contemplated by the recipe book, then the judge may depart.

Importantly, the Court in Koon also clarified the standard of review to be applied when a sentence is appealed: The district court should get "substantial deference."

"District courts," said the Supreme Court, "have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do."

Some members of Congress, notably Sensenbrenner, were not happy with Koon, and one theory about the ferocious attack on Judge Rosenbaum is that it is in part an attack on Koon.

Since Rosenbaum's ordeal began, Sensenbrenner and other Republicans have managed to effectively overturn Koon, in large part, by legislation. This was achieved by shoehorning the so-called Feeney amendment (after Sensenbrenner's colleague on the Judiciary Committee, Republican Tom Feeney of Florida) into the "Amber Alert" bill, which established a nationwide system to locate missing children. In today's media climate, that practically assured that you couldn't cast a vote against what amounted to a wholesale attack on judicial sentencing discretion without the risk of being labeled soft on child molesters and perverts, if not one yourself.

Despite the fact it was opposed by everyone from the National Association of Criminal Defense Attorneys to the American Petroleum Institute — and, in an unusual public statement, by Chief Justice William Rehnquist — the Feeney

amendment passed, in a somewhat compromised form.

Among other things (in all cases, not just child abduction), it changes the standard of appellate review of departures from due deference to de novo. It mandates new reporting requirements for judges who depart, provides the judicial committees of Congress with new oversight powers, and gives the Sentencing Commission six months to come up with new rules that will reduce the frequency of departures. It also reduces the number of judges on the seven-person Sentencing Commission from at least three to no more than three.

**The Sentencing Ratchet**

Underlying Rosenbaum's inquisition, the Feeney amendment, and much of the debate about the sentencing guidelines, is the whole issue of drugs and the demagoguery for which it is a seemingly bottomless fount.

In some ways, Minnesota has escaped the most blatant manifestations of the phenomenon, but not entirely. With so much water over the dam, it's easy to forget that in 1998, the Republican Party in Minnesota launched Norm Coleman's campaign for governor with a picture-book dive right down to the bottom of the barrel on the drug issue. Literally the opening salvo of the campaign was the Republican claim that Humphrey was soft on crime because he had been a party to a reduction in penalties for marijuana possession some years before.

The Humphrey campaign plunged right in, with the observation that Coleman had been a dope smoker in college, and if he'd been subject to the penalties the Republicans claim to yearn for, he probably wouldn't be around as a politician. Together they frolicked and splashed. Meanwhile the ex-wrestler and third-party candidate mused over the radio that if he wasn't pursuing politics, he would probably be up in northern Minnesota somewhere growing hemp.

You'd have to say Jesse Ventura's victory was the exception that proves the rule: Few on the American political stage lose an election by going "too far" in their advocacy for drug sentences. William Bennett, at the time wrestling with his own 40-milligrams-per-day nicotine habit, once told the a TV audience he would advocate beheading for dealers, and it didn't hurt his numbers. With few exceptions, drug

sentencing laws work like a ratchet. They only turn in one direction.

Largely because of drug convictions, the United States has the highest prison population rate in the world, with 702 people incarcerated per 100,000. That compares to 139 people incarcerated per 100,000 in the United Kingdom, which has the highest incarceration rate in the European Union.

Both major U.S. political parties have exploited the drug issue, but the Republicans have pushed the envelope. It's easy to see this as the function of an ideological and temperamental predisposition, and no doubt to some extent it is. But in the 1990s a new factor emerged, with enormous political consequences: The incarceration rate began to have a significant effect on the electoral process.
According to The Sentencing Project, a Washington, D.C., nonprofit, about 3.9 million Americans, including 1.4 million African-American men, have currently or permanently lost their voting rights as a result of a felony conviction. In the seven states that deny the vote to ex-offenders, one in four black men is permanently disenfranchised.

The only policy tool with such exhilarating effects on the electoral process, from the viewpoint of some Republicans, is the immigration policies, which effectively create an entire class of laborers who can't vote. Florida is a special and noteworthy case. Not only are the pools cleaned, the lawns trimmed and the roofs shingled by disenfranchised laborers, but at the time of the 2000 presidential election, according to an estimate by The Sentencing Project, its residents included 600,000 ex-felons who also could not vote.

### Subverting the Public Interest

The same subcommittee that is currently spending its time building its case against Rosenbaum is also responsible for terrorism and homeland security, from the protection of nuclear power plants to the security of ports. A question arises about possible misallocation of resources.

But another question may be more consequential in the long run. In legislative hearings, witnesses are called to provide information and a viewpoint that will help members in their deliberations. For this process to work, the witnesses must be free to make their

case with passion, even with wile, and without feeling that they have to consult an attorney before they speak. By laying down a record that suggests a witness who brings a viewpoint at odds with that of the subcommittee will risk retaliation, the subcommittee threatens national security in much the same way as an executive who pressures an intelligence official to cook the books.

One prominent judge didn't shy away from addressing the prospect of impeachment in a recent speech in which he defended "our colleague Judge James Rosenbaum." Eleven federal judges (in history), he noted, have in fact been impeached. Six were convicted, one "by default," because he joined the Confederacy. The other convictions were for financial improprieties, income tax evasion, and perjury.

Thus, the judge argues, the historical record upholds a principle that was clearly established in the case of Justice Samuel Chase, during the administration of Thomas Jefferson: A judge's judicial acts cannot serve as a basis for his removal from office.

The judge making the argument was Chief Justice William Rehnquist, in a speech on May 5.

Can't hurt.

---

◄ **Back to Articles**

---

| | |
|---|---|
| **Subj:** | **Activity in Case 0:06-cv-01607-JMR-FLN Anderson v. St Paul, City of "Order Adopting Report and Recommendations"** |
| Date: | 6/26/2006 10:14:13 A.M. Central Daylight Time |
| From: | ecf-notice@mnd.uscourts.gov |
| To: | ecf-notice@mnd.uscourts.gov |

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* There is no charge for viewing opinions.**

**U.S. District Court**

**District of Minnesota**

Notice of Electronic Filing

The following transaction was received on 6/26/2006 at 10:10 AM CDT and filed on 6/26/2006

**Case Name:**          Anderson v. St Paul, City of
**Case Number:**       0:06-cv-1607
**Filer:**
**WARNING: CASE CLOSED on 06/26/2006**
**Document Number:** 15

**Docket Text:**
ORDER ADOPTING [11] Report and Recommendation and denying [3] Motion for Leave to Proceed in forma pauperis filed by Sharon Scarrella Anderson. Appellant Anderson's [1] "Notice of Removal" is summarily stricken and vacated. Signed by Chief Judge James M Rosenbaum on 6/20/2006. (HLL)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1051215216 [Date=6/26/2006] [FileNumber=1032975-0
] [0371cfbcc1ae56e00884d68ae38f56b519e0295462fb05c46cf767c50415fdf41f6
b28b86e1103a3f25104efbbcfc353c2413824338bfd60c39efa194e478a07]]

**0:06-cv-1607 Notice will be electronically mailed to:**

Sharon Scarrella Anderson     sharon4anderson@aol.com

**0:06-cv-1607 Notice will be delivered by other means to:**

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

City of St. Paul,                                          Civil 06-1607 JMR/FLN

      Respondent,

    v.                                                    O R D E R

Mrs. Sharon Anderson,

      Appellant.

_____

      Based upon the Findings of Fact, Conclusions of Law, and Recommendation by United States Magistrate Judge Franklin L. Noel dated May 25, 2006, all the files and records, and no objections having been filed to said Report and Recommendation,

      **IT IS HEREBY ORDERED** that:

      1.  Appellant Anderson's Application to Proceed Without Prepayment of Fees, (Docket No. 3), is **DENIED**;

      2.  Appellant Anderson's "Notice of Removal," (Docket No. 1), is summarily stricken and vacated; and

      3.  This case is **TERMINATED AND CLOSED** by the Clerk of Court.

DATED: June 20, 2006.        s/James M. Rosenbaum
at Minneapolis, Minnesota     CHIEF JUDGE JAMES M. ROSENBAUM
                    United States District Court

CLOSED, CV

# U.S. District Court
## District of Minnesota (DMN)
## CIVIL DOCKET FOR CASE #: 0:06-cv-01607-JMR-FLN

Anderson v. St Paul, City of

Assigned to: Chief Judge James M Rosenbaum

Referred to: Magistrate Judge Franklin L Noel

Demand: $75,000

Cause: 42:1983 Civil Rights Act

Date Filed: 04/26/2006

Jury Demand: Plaintiff

Nature of Suit: 440 Civil Rights: Other

Jurisdiction: Federal Question

**Plaintiff**

**Sharon Scarrella Anderson**

*Suing as Sharon Anderson*

represented by **Sharon Scarrella Anderson**
PO Box 4384
St Paul, MN 55104-0384
Email: sharon4anderson@aol.com

PRO SE

V.

**Defendant**

**St Paul, City of**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/26/2006 | 1 | COMPLAINT and Petition for Immediate Temporary Injunctive Relief Barring Trial in State Court; with Jury Demand, against City of St Paul, assigned to Judge James M Rosenbaum per Civil rights list and referred to Magistrate Judge Franklin L. Noel., filed by Sharon Anderson. (Attachments: # 1 Exhibit A & B# 2 Civil Cover Sheet)(MKC) (Entered: 04/27/2006) |
| 04/26/2006 | 2 | MEMORANDUM by Sharon Anderson in support of 1 Petition for Immediate Temporary Injunctive Relief Barring Trial Via Administrataive Hearing, filed by Sharon Anderson. (MKC) (Entered: 04/27/2006) |
| 04/26/2006 | 3 | MOTION for Leave to Proceed in forma pauperis by Sharon Anderson. (MKC) (Entered: 04/27/2006) |

| 04/26/2006 | ●4 | AFFIDAVIT of Sharon Anderson in SUPPORT OF 3 MOTION for Leave to Proceed in forma pauperis filed by Sharon Anderson. (MKC) (Entered: 04/27/2006) |
| 04/26/2006 | ●5 | AFFIDAVIT of Service by Sharon Anderson re 3 MOTION for Leave to Proceed in forma pauperis, 4 Affidavit in Support of Motion, 1 Complaint and Petition for injunctive relief, 2 Memorandum (MKC) (Entered: 04/27/2006) |
| 05/02/2006 | ●6 | ORDER Within ten (10) days from the date of this order "Appellant" Anderson must submit copies of all process, pleadings, and orders served upon her in the state court action that she is attempting to remove, as required by 28 U.S.C. 1446(a), failing which the Court will recommend that "Appellant" Anderson's Notice of Removal be summarily stricken, and that this removal proceeding be terminated. Signed by Magistrate Judge Franklin L Noel on 5/2/06. (JLB) (Entered: 05/03/2006) |
| 05/08/2006 | ●7 | MOTION for Recusal by Sharon Scarrella Anderson. (Anderson, Sharon) (Entered: 05/08/2006) |
| 05/21/2006 | ●8 | EXHIBIT (Filed as "MOTION to Amend/Correct 1 Complaint") by Sharon Scarrella Anderson. (Anderson, Sharon) Modified text on 5/22/2006 (gjs). (Entered: 05/21/2006) |
| 05/21/2006 | ●9 | EXHIBIT (filed as "Amended Complaint against all parties") filed by Sharon Scarrella Anderson.(Anderson, Sharon) Modified on 5/22/2006 (gjs). (Entered: 05/21/2006) |
| 05/23/2006 | ●10 | EXHIBIT (Filed as "AMENDED ANSWER with Jury Demand") by Sharon Scarrella Anderson. (Anderson, Sharon) Modified title on 5/24/2006 (gjs) (Entered: 05/23/2006) |
| 05/26/2006 | ●11 | REPORT AND RECOMMENDATION re 3 MOTION for Leave to Proceed in forma pauperis filed by Sharon Scarrella Anderson,, 1 Complaint, filed by Sharon Scarrella Anderson. Objections to R&R due by 6/14/2006. Signed by Magistrate Judge Franklin L Noel on 5/25/05. (GJS) (Entered: 05/26/2006) |
| 05/26/2006 | ●12 | ORDER- DENYING 7 Motion for Recusal . Signed by Magistrate Judge Franklin L Noel on 5/25/06. (GJS) (Entered: 05/26/2006) |
| 06/14/2006 | ●13 | MOTION to Amend/Correct 9 Amended Complaint *Writ of* |

| | | |
|---|---|---|
| | | *Prohibition MNSupremeCrt* by Sharon Scarrella Anderson. (Anderson, Sharon) (Entered: 06/14/2006) |
| 06/15/2006 | 14 | AFFIDAVIT of Service by Sharon Scarrella Anderson re 13 MOTION to Amend/Correct 9 Amended Complaint *Writ of Prohibition MNSupremeCrt Affidavit of Service by e-commerce* (Anderson, Sharon) (Entered: 06/15/2006) |
| 06/26/2006 | 15 | ORDER ADOPTING 11 Report and Recommendation and denying 3 Motion for Leave to Proceed in forma pauperis filed by Sharon Scarrella Anderson. Appellant Anderson's 1 "Notice of Removal" is summarily stricken and vacated. Signed by Chief Judge James M Rosenbaum on 6/20/2006. (HLL) Modified on 6/26/2006 (gjs). (Entered: 06/26/2006) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/27/2006 16:00:22 | | |
| **PACER Login:** | sa1299 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 0:06-cv-01607-JMR-FLN |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |